[Cite as *Lind Media Co. v. Marion Twp. Bd. of Zoning Appeals*, 2022-Ohio-1361.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

LIND MEDIA COMPANY,

      APPELLEE,                                CASE NO. 9-21-39

      v.

MARION TOWNSHIP BOARD
OF ZONING APPEALS ET AL.,               O P I N I O N

      APPELLANTS.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 2020CV0354**

**Judgment Affirmed**

**Date of Decision: April 25, 2022**

---

APPEARANCES:

    *Paul-Michael LaFayette* **for Appellants**

    *Thomas R. Gilman* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Appellants, the Marion Township Board of Zoning Appeals ("Board") and Mark McCleary ("McCleary"), in his capacity as the Marion Township Zoning Inspector (collectively, "Marion Township"), appeal the October 20, 2021 judgment of the Marion County Court of Common Pleas reversing Marion Township's decision denying the application for a zoning permit of the petitioner-appellee, Lind Media Company ("Lind"). For the reasons that follow, we affirm.

{¶2} This case stems from Lind's February 9, 2020 application for a zoning permit to install a three-sided digital media advertising sign at the northwest corner of the intersection of Mount Vernon Road (State Route 95) and University Drive in Marion Township, Marion County, Ohio. Section 22.014 of the Marion Township Zoning Resolution ("Resolution") provides as follows:

> The Zoning Inspector *shall* act upon all such applications on which he is authorized to act by the provisions of this Resolution within ten (10) days after these are filed in full compliance with all the applicable requirements. He *shall* either issue a Zoning Permit within said ten (10) days or *shall* notify the applicant in writing of his refusal of such permit and the reasons therefor. Failure to notify the applicant in case of such refusal within said ten (10) days *shall* entitle the applicant to a Zoning Permit unless the applicant consents to an extension of time.

(Emphasis added.) Marion Twp. Zoning Res. 22.014.

{¶3} Instead of acting in accordance with Section 22.014 of the Resolution by issuing a zoning permit or notifying Lind of the refusal of such permit within 10 days of its application, Lind's application was referred to the Board and assigned to

be heard as an appeal at its May 4, 2020 public meeting. Specifically, the notice states, "The appellant is requesting a conditional use permit for a billboard." (Tab 2). During the May 4, 2020 hearing, the Board moved to table its determination on Lind's "appeal" until its next monthly meeting in order for the Board to obtain legal advice on Lind's application. (Tab 3).

{¶4} Thereafter, Lynn Clabaugh ("Clabaugh"), the former Marion Township Zoning Inspector, denied Lind's application for the zoning permit on June 22, 2020. (*See* Tab 5, Twp. Ex. 4). Specifically, Clabaugh determined that Lind's application did not conform to Sections 18.011 and 18.019(A) of the Marion Township Zoning Resolution. (*Id.*). Section 18.011, titled Traffic Hazards, provides that

> [n]o sign shall be erected in such a manner as to obstruct free and clear vision, or at any location where, by reason of position, shape, or color it may interfere with, obstruct the view of or be confused with any authorized traffic sign, signal or device, or which makes use if [sic] the words "stop", "look", "danger", or other word, phrase or symbol in such manner as to interfere with or mislead or confuse motorists or pedestrians. Light sources for illuminated signs shall not be of such brightness as to constitute a hazard to pedestrian or vehicular traffic. No rotating beam, beacon, or flashing illumination resembling an official traffic control or emergency light shall be used in connection with any sign display, nor shall any illuminated device designed to attract attention of users of the street be permitted unless it is an integral and functional part of the sign herein defined.

Marion Twp. Zoning Res. 18.011. Section 18.019, titled Illumination, of the Resolution prescribes the requirements for accessory and advertising sign illumination. As relevant here, that section provides, "[w]here illumination is

permitted in any district, the source of light shall be shaded or concealed so as not to be a source of safety or health hazard. Illuminated signs shall conform with the limitations * * * relating to traffic hazards." Marion Twp. Zoning Res. 18.019(A).

{¶5} Importantly, Clabaugh acknowledged "the time it has taken to give [Lind] an answer on [its] application [due to] meeting delays surrounding the pandemic restrictions" and employee turnover at "the Marion Regional Planning office as well as the Marion County Prosecutors' office," "requiring [them] to basically start over again resulting in even further delays." (Tab 5, Twp. Ex. 4). Moreover, Clabaugh conceded that Lind's application was reviewed by the Board during its May and June 2020 meetings and further conceded that the Board "did not follow proper processes, public notice or timelines, in which board members could only render their 'opinion vote' on proceeding with the sign." (*Id.*).

{¶6} Lind appealed Clabaugh's decision to the Board on July 9, 2020. (Tab 5, Twp. Ex. 5). Notably, the hearing notice states that "[t]he appellant is requesting a variance to zoning codes 18.011 Traffic hazards and 18.019 Illumination in order to construct a digital billboard." (Tab 5, Twp. Ex. 1). The Board conducted an evidentiary hearing on September 14, 2020 during which Lind argued, in part, that it was entitled to the permit since it was undisputed that Clabaugh failed to act within 10 days as required by Section 22.014 of the Resolution. In particular, the parties

do not dispute that Marion Township received Lind's application on February 21, 2020. (*See* Tab 5, Twp. Ex. 3).

{¶7} The Board also heard the testimony of Clabaugh's successor, McCleary, who testified that it was his assumption that Clabaugh denied Lind's application based on Clabaugh's "opinion" that the sign would violate Sections 18.011 and 18.019(A) of the Resolution. (Sept. 14, 2020 Tr. at 20). Furthermore, McCleary testified that "[i]t'd just be [his] opinion" that the sign "would be confusing to drivers." (*Id.* at 21). Moreover, the Board heard testimony from four citizens in opposition to the sign.

{¶8} On October 5, 2020, the Board affirmed Clabaugh's decision denying Lind's application for a zoning permit. (Oct. 5, 20220 Tr. at 5-6); (Tabs 3, 7). In its decision affirming Clabaugh's decision denying Lind's application for a zoning permit, the Board rejected Lind's argument that it was entitled to the permit since Clabaugh failed to act within 10 days as required by Section 22.014 of the Resolution because (1) Lind did not "raise any objection to" Clabaugh's dilatory action; (2) "the Governor of the State of Ohio declared a state of emergency due to the public health pandemic" on March 9, 2020; (3) "nothing in the Ohio Revised Code requires a Zoning Inspector to approve or deny a permit within 10 days of receipt and this provision of the Zoning Resolution is directory only"; and (4) allowing applications to be granted by default "would set a dangerous precedent *

* * ." (Tab 7). Instead, the Board concluded that Lind failed to prove by a preponderance of reliable and credible evidence that Clabaugh erred by denying the zoning permit based on the provisions of Sections 18.011 and 18.019(A) of the Resolution. (*Id.*).

{¶9} On November 3, 2020, Lind filed a R.C. Chapter 2506 appeal in the Marion County Court of Common Pleas seeking review of the Board's decision affirming Clabaugh's decision denying Lind's application for a zoning permit. On June 14, 2021, the trial court's magistrate concluded the Board's decision affirming Clabaugh's decision denying Lind's application for a zoning permit was invalid because the Board "did not comply with Ohio Open Meetings Law." (Doc. No. 18).

{¶10} Marion Township filed its objection to the magistrate's decision on June 28, 2021 in which it argued that "the Ohio Open Meeting Act is wholly inapplicable to these proceedings" because "the hearing conducted by the [Board] was a quasi-judicial proceeding * * * ." (Doc. No. 19). On August 19, 2021, before addressing Marion Township's objection to the magistrate's decision, the trial court ordered the parties to address whether the trial court had subject-matter jurisdiction to review the Board's decision affirming Clabaugh's decision denying Lind's application for a zoning permit. Following responses from the parties, and the trial court's satisfaction that it had subject-matter jurisdiction over the case, the trial court

issued its decision addressing Marion Township's objection and rejecting the magistrate's decision on October 12, 2021.

{¶11} On October 20, 2021, the trial court concluded that Board acted arbitrarily by affirming Clabaugh's decision denying Lind's application for a zoning permit. Specifically, the trial court concluded that Section 22.014 of the Resolution requires the zoning inspector to act on applications within 10 days after such are properly filed, and that it is undisputed that Clabaugh did not act within that time. That same day, the trial court issued an entry reversing Marion Township's decision denying Lind's application for a zoning permit. (Doc. No. 26).

{¶12} On November 19, 2021, Marion Township filed its notice of appeal and raises one assignment of error for our review.

**Assignment of Error**

**The trial court erred when it reversed the decision of Appellants Marion Township Zoning Inspector and the Marion Township Board of Zoning Appeals to deny Appellee Lind Media Company's application for a zoning permit.**

{¶13} In their sole assignment of error, Marion Township argues that the trial court erred by reversing its decision denying Lind's application for a zoning permit. Specifically, Marion Township contends that the trial court erred by concluding that the language of Section 22.014 of the Resolution is mandatory and that Lind is entitled to the zoning permit.

*Standard of Review*

**{¶14}** "Decisions of administrative agencies are directly appealable to a court of common pleas," which "has jurisdiction to review final orders issued by 'any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state.'" *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, ¶ 12, quoting R.C. 2506.01(A). "R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 22.

**{¶15}** Specifically, "R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal." *Id.* Under that statute, "[a]cting as an appellate court, the common pleas court 'may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.'" *Shelly Materials, Inc.* at ¶ 12, quoting R.C. 2506.04. "These grounds for reversal are set forth in a disjunctive list, so each ground must be read to have a distinct meaning." *Id.* "The presence of any one of the six grounds listed in R.C. 2506.04 will therefore by itself justify a court of common pleas' reversal of an

administrative order." *Id.* "'Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.'" *Access Ohio, LLC v. Gahanna*, 10th Dist. Franklin No. 19AP-64, 2020-Ohio-2908, ¶ 10, quoting R.C. 2506.04.

{¶16} However, "the scope of review for a common pleas court in an R.C. Chapter 2506 administrative appeal is not de novo but that the appeal "'often in fact resembles a de novo proceeding."'" *Shelly Materials, Inc.* at ¶ 13, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984), quoting *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370 (1975). "'The court weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of' the administrative agency." *Id.*, quoting *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 13. *See also id.* at ¶ 28 (DeWine, J., dissenting) ("On review of an administrative agency's decision under R.C. 2506.04, 'the Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative

and substantial evidence to support the agency decision.'"), quoting *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979).

**{¶17}** "The court of common pleas may not 'blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.'" *Id.* at ¶ 13, quoting *Dudukovich* at 207. "Nevertheless, the court of common pleas has 'the power to examine the whole record, make factual and legal determinations, and reverse the [administrative agency's] decision if it is not supported by a preponderance of substantial, reliable, and probative evidence.'" *Id.*, quoting *Cleveland Clinic Found.* at ¶ 24, citing *Dudukovich* at 207.

**{¶18}** "A party who disagrees with a decision of a court of common pleas in an R.C. Chapter 2506 administrative appeal may appeal that decision to the court of appeals but only on 'questions of law.'" *Id.* at ¶ 17, quoting R.C. 2506.04. Consequently, "under R.C. 2506.04, an appeal to the court of appeals is 'more limited in scope' than * * * the appeal to the court of common pleas." *Id.*, quoting *Kisil* at 34. *See also Cleveland Clinic Found.* at ¶ 25 (underscoring that "the standard of review for an appellate court reviewing a judgment of a common pleas court in this type of appeal is narrower and more deferential to the lower court's decision"). "While the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence." *Shelly Materials, Inc.* at ¶ 17. "In addition to deciding purely legal issues, which are reviewed de novo, the court

of appeals is charged with determining whether the trial court abused its discretion, 'which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence.'" *Access Ohio, LLC,* 2020-Ohio-2908, at ¶ 12, quoting *Shelly Materials, Inc.* at ¶ 17, citing *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, ¶ 7, citing *Kisil* at 34.

**{¶19}** Accordingly, our determination in this case "is limited to whether the trial court made any errors of law assigned on appeal, which we review de novo, and whether the trial court abused its discretion in applying the law." *Id.* at ¶ 13, citing *One Neighborhood Condominium Assn. v. Columbus, Dept. of Pub. Util., Div. of Water*, 10th Dist. Franklin No. 16AP-653, 2017-Ohio-4195, ¶ 14. "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶20}** "The General Assembly has delegated to boards of townships trustees the authority to legislate land use within their townships under R.C. 519.02."

*Village of Terrace Park v. Anderson Twp. Bd. of Zoning Appeals*, 1st Dist. Hamilton No. C-140741, 2015-Ohio-4602, ¶ 11. "A board of township trustees, sitting as a legislative body, 'is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.'" *Id.*, quoting *Willott v. Beachwood*, 175 Ohio St. 557, 560 (1964).

**{¶21}** "Townships boards of zoning appeals also exist by way of statute under R.C. 519.14." *Id.* at ¶ 12. "Pertinent to these appeals, R.C. 519.14(B) permits a board of zoning appeals to grant variances from a zoning resolution 'as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done." *Id.*, quoting R.C. 519.14(B). "Furthermore, R.C. 519.14(C) permits a board of zoning appeals to grant a conditional zoning certificate for those specific land uses permitted by a zoning resolution." *Id.*

**{¶22}** In this case, the parties dispute whether the trial court erred in its conclusion that Section 22.014 of the Resolution mandates the zoning inspector to grant or deny an application for a zoning permit within 10 days of application. Consequently, the issue in this case amounts to a dispute over the interpretation of the term "shall" as it is used in Section 22.014 of the Resolution. Marion Township

advances a relaxed view of the meaning of the term and claims that the provision is merely directory since "[t]he Zoning Inspector * * * is only "authorized to act" upon those applications that comply with the Zoning Resolution." (Appellant's Brief at 7, quoting Marion Twp. Zoning Res. 22.014). Lind disagrees and contends that the trial court correctly concluded that Section 22.014 of the Resolution requires the zoning inspector to act "[e]ven if the proposed billboard violated one or both of the * * * sections of the Zoning Resolution * * * because there is nothing inconsistent or violative of law in a compulsory granting of a zoning permit based on Section 22.014 of the Resolution." (Appellee's Brief at 9-10).

{¶23} "Interpretation of a statute or ordinance is a matter of law, and thus, the proper standard of review is de novo." *State ex rel. Osborne v. N. Canton*, 5th Dist. Stark No. 2018CA00132, 2019-Ohio-1744, ¶ 20, citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9. *Accord Access Ohio, LLC*, 2020-Ohio-2908, at ¶ 15 ("The application of [a zoning statute] to the facts is a 'question of law'— 'an issue to be decided by the judge, concerning the application or interpretation of the law.'"), quoting *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148 (2000), and citing *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12; *Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, at ¶ 25. "De novo review requires us to conduct an independent review of the record without deference to the trial court's decision." *Matrix*

*Technologies, Inc. v. Kuss Corp.*, 6th Dist. Lucas No. L-07-1301, 2008-Ohio-1301, ¶ 11, citing *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

{¶24} When reviewing "the meaning of a zoning ordinance," courts "apply the 'standard rules of statutory construction.'" *Omran v. Lucas*, 7th Dist. Mahoning No. 21 MA 0031, 2021-Ohio-4592, ¶ 51, quoting *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 12, and citing *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, ¶ 30. "A court's primary goal when determining the meaning of a zoning ordinance is to give effect to the enacting body's intent." *Id.*, citing *State v. Bryant*, 160 Ohio St.3d 113, 2020-Ohio-1041, ¶ 12 and *Cleveland Clinic Found.* at ¶ 29. "To determine intent, appellate courts 'first look to the text of the [ordinance].'" *Id.*, quoting *State v. Pendergrass*, 162 Ohio St.3d 25, 2020-Ohio-3335, ¶ 5.

{¶25} "When the ordinance's text clearly and unambiguously reveals intent, courts must apply the ordinance as written." *Id.* at ¶ 52, citing *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, ¶ 11 and *Wingate v. Hordge*, 60 Ohio St.2d 55, 58 (1979). "Accordingly, a court's first step when considering the meaning of an ordinance 'is always to determine whether the [ordinance] is "plain and unambiguous."'" *Id.*, quoting *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 8, quoting *State v. Hurd*, 89 Ohio St.3d 616, 618 (2000), and citing

*State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, ¶ 15. "'"If [the ordinance] is not ambiguous, then [courts] need not interpret it; [courts] must simply apply it."'" *Id.*, quoting *Wilson* at ¶ 11, quoting *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 13. "When the language used in an ordinance "'is plain and unambiguous, and conveys a clear and definite meaning, [courts] must rely on what the [legislative body] has said."'" *Id.*, quoting *Wilson* at ¶ 11, quoting *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, ¶ 12.

**{¶26}** "Additionally, courts must 'give effect only to the words the legislature used, making neither additions to, nor deletions from, the statutory language.'" *Id.* at ¶ 53, quoting *Wilson* at ¶ 11. "Furthermore, "'[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand."'" *Id.*, quoting *State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, ¶ 18, quoting *Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, ¶ 36 (10th Dist.). Importantly, "when a legislative 'definition is available, we construe the words of the statute accordingly.'" *Id.*, quoting *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, ¶ 4, citing R.C. 1.42, and citing *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 25.

**{¶27}** "When the language of an ordinance is ambiguous, a court may then consider rules of construction to determine legislative intent." *Id.* at ¶ 54, citing *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, ¶ 10 and *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). An ordinance "'is ambiguous "'if a reasonable person can find different meanings in the [ordinance] and if good arguments can be made for either of two contrary positions.'"'" *Id.*, quoting *Turner* at ¶ 12, quoting *Sunset Estate Properties, LLC v. Lodi*, 9th Dist. Medina No. 12CA0023-M, 2013-Ohio-4973, ¶ 20, quoting *4522 Kenny Rd., L.L.C., v. Columbus Bd. of Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, ¶ 13 (10th Dist.).

**{¶28}** "R.C. 1.49 lists several factors that a court may consider when determining the legislative intent of an ambiguous statute." *Id.* at ¶ 55, citing *Symmes* at 556. One such "fundamental rule of statutory construction [is] that statutes relating to the same subject matter should be construed together." *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 294 (1995). *See also State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995) ("The in pari materia rule of construction may be used in interpreting statutes where some doubt or ambiguity exists."). "In reading statutes in pari materia and construing them together, this court must give a reasonable construction that provides the proper effect to each statute." (Citation omitted.) *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 22.

**{¶29}** Furthermore, "zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled." *Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, at ¶ 34. Likewise, "when applying a zoning provision, a court must not view the provision in isolation; rather, its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.'" *Id.* at ¶ 35, quoting *Henley*, 90 Ohio St.3d at 152.

**{¶30}** "Nevertheless, in interpreting a zoning ordinance, "'[a]n administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise and is to be presumed valid."'" *Access Ohio, LLC*, 2020-Ohio-2908, at ¶ 16, quoting *JP Morgan Chase Bank, Inc. v. Dublin*, 10th Dist. Franklin No. 10AP-965, 2011-Ohio-3823, ¶ 11, quoting *Glass City Academy, Inc. v. Toledo*, 179 Ohio App.3d 796, 2008-Ohio-6391, ¶ 18 (6th Dist.), citing *Lamar Outdoor Advertising, Inc. v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 20158, 2004-Ohio-4796, ¶ 6, and *Dick v. Kelleys Island Bd. of Zoning*, 6th Dist. Erie No. E-86-63, 1987 WL 13075, *5 (June 19, 1987). "Unless the interpretation of a local zoning code is clearly in error, a court should defer to the administrative interpretation." *Id.*, citing *In re Aultman Hosp.*, 80 Ohio App.3d 134, 139 (10th Dist.1992). "Such deference 'is based upon an awareness that an administrative judgment is "the product of administrative experience, appreciation

of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts.”’” *Id.*, quoting *In re Aultman Hosp.* at 139, quoting *Hamilton Cty. Bd. of Mental Retardation & Deval. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 151 (1989).

**{¶31}** In this case, the trial court did not abuse its discretion by reversing Marion Township’s decision denying Lind’s application for a zoning permit. That is, the trial court did not err by concluding that the language of Section 22.014 of the Resolution is mandatory and that Lind is entitled to the zoning permit.

**{¶32}** Based on our de novo review of the record, we conclude that the language of the Resolution is dispositive. Importantly, the Resolution is not ambiguous. *Accord Wilson*, 150 Ohio St.3d 368, 2017-Ohio-1410, at ¶ 12. *See also State ex rel. R.L. Hawk, LLC v. Troy Planning Commission*, 2d Dist. Miami No. 2020-CA-11, 2021-Ohio-327, ¶ 20 (concluding that an analogous statute—R.C. 711.09(C)—“is not ambiguous and does not allow a failure to comply to be cured by later approval with added conditions.”).[1]

**{¶33}** Marion Township’s mandate in its Zoning Resolution clearly and unequivocally commands that “[t]he Zoning Inspector *shall* act upon all such applications * * * within ten (10) days,” and that “[h]e *shall* either issue a Zoning

---

[1] R.C. 711.09(C) and 711.10(C) are similar statutes which “impose a 30-day time limit for endorsing approval or refusing to approve a plat.” *State ex rel. R.L. Hawk, LLC v. Troy Planning Commission*, 2d Dist. Miami No. 2020-CA-11, 2021-Ohio-327, ¶ 35, fn.2. *See also Wesolowski v. Broadview Hts. Planning Commission*, 158 Ohio St.3d 58, 2019-Ohio-3713, ¶ 20.

Permit within said ten (10) days or *shall* notify the applicant in writing of his refusal," action on an application by the zoning inspector within the 10 days of filing is mandatory. (Emphasis added.) Marion Twp. Zoning Res. 22.014. *Compare R.L. Hawk, LLC* at ¶ 20 (reflecting that R.C. 711.09(C) "is quite clear: it indicates that if the planning commission does not either endorse its approval or reject the plan, the plan is deemed to have been approved"); *P. H. English, Inc. v. Koster*, 61 Ohio St.2d 17, 19 (1980) (concluding that, under R.C. 711.10, "[i]f the commission fails to act within [the 30-day limitation], the plat is deemed approved And [sic] prime for recordation"). *See also* R.C. 519.07 (prescribing that "[t]he approval of the planning commission shall be conclusively presumed unless, within twenty days after receiving the proposed zoning resolution, it notifies the zoning commission to the contrary") and 303.07. Importantly, the language of the Resolution unambiguously conveys that the zoning inspector *shall* act within 10 days of receiving an application, "'and no apparent purpose could be served by attempting to torture it into something else.'" *Wilson* at ¶ 12, quoting *Beach v. Mizner*, 131 Ohio St. 481, 485 (1936).

{¶34} Unequivocally, "'"[s]hall" means must.'" *Id.* at ¶ 13, quoting *Application of Braden*, 105 Ohio App. 285, 286 (1st Dist.1957), and citing *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971) ("The word 'shall' is usually interpreted to make the provision in which it is contained mandatory, * * *

especially if frequently repeated"). "And '[t]he word "must" is mandatory. It creates an obligation. It means obliged, required, and imposes a physical or moral necessity.'" *Id.*, quoting *Willis v. Seeley*, 68 N.E.2d 484, 485 (C.P.1946). Consequently, it is well settled "that use of the term 'shall' in a statute [or ordinance] connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *Id.*, citing *State ex rel. Cincinnati Enquirer v. Lyons*, 140 Ohio St.3d 7, 2014-Ohio-2354, ¶ 28.

**{¶35}** In this case, there is absolutely no indication in the Resolution that the board of township trustees meant "shall" to mean anything other than "must." *Accord Wilson* at ¶ 13 ("Here, there is absolutely no indication in the statutory scheme that the General Assembly meant 'shall' to mean anything other than 'must.'"). *See also Pidgeon v. Ramar Land Corp.*, 62 Ohio Misc.2d 223, 230 (C.P.1991). Importantly, the board of township trustees defined "shall" in the Resolution to mean mandatory—namely, Section 2.01 of the Resolution, titled definitions, specifically instructs that "the 'shall' is *mandatory* and not merely directive." (Emphasis added.) Marion Twp. Zoning Res. 2.01.

**{¶36}** Consequently, since Section 22.014 of the Resolution states that "[t]he Zoning Inspector *shall* act upon all such applications * * * within ten (10) days," and that "[h]e *shall* either issue a Zoning Permit within said ten (10) days or *shall* notify the applicant in writing of his refusal," action on an application by the zoning

inspector within the 10 days of filing is mandatory. (Emphasis added.) Marion Twp. Zoning Res. 22.014. *See, e.g.*, *Wilson* at ¶ 18 (asserting that "no court has the authority to ignore plain and unambiguous statutory language). *See also Pidgeon*, 62 Ohio Misc.2d at 230 (concluding that "[t]he provisions of R.C. 303.12(E) requiring action on the part of the planning commission, thus, are mandatory in spite of the fact that the planning commission's role is purely ministerial in nature").

{¶37} Moreover, addressing a statute under Title VII—Municipal Corporations—of the Revised Code, "which requires that [a city planning] commission either approve or deny a subdivision application within 30 days after its submission," the Supreme Court of Ohio recently concluded that the statute "prevails over any conflicting municipal subdivision regulation." *Wesolowski v. Broadview Hts. Planning Commission*, 158 Ohio St.3d 58, 2019-Ohio-3713, ¶ 2, 29. Of significance here, not only does Marion Township's Resolution not conflict with any statute, but the Resolution prescribes the *same* mandatory outcome required under R.C. 711.09(C) (as determined by the Supreme Court). Undoubtedly, the township's requirement that its zoning inspector issue a decision on a zoning application within 10 days of its filing "is a mandatory part of the [township's] legislative scheme," which "fosters the expeditious and efficient administration of" township business, "and we assume that the [township trustees']

commands in the [zoning resolution] were intended to be met with strict compliance." *Wilson* at ¶ 14.

**{¶38}** Based on the foregoing reasons, we conclude that the trial court did not err by concluding that the language of Section 22.014 of the Resolution is mandatory and that Lind is entitled to the Zoning Permit. Therefore, the trial court did not abuse its discretion by reversing Marion Township's decision denying Lind's application for a zoning permit.

**{¶39}** Marion Township's assignment of error is overruled.

**{¶40}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**